# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSE MOLINA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLS-19-3123 |
| KP STONEYMILL, INC., et al., | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiff Jose Carballo Molina ("Plaintiff") filed a "Motion for Attorney Fees and Costs" and a memorandum in support thereto (ECF Nos. 41, 41-1) ("Motion"). Defendants KP Stoneymill, Inc., d/b/a/ King Pollo, KP Wheaton, Inc., and Daesung (David) Ji ("Defendants") filed an opposition, and Plaintiff replied. (ECF Nos. 42, 43). I believe that the issues have been fully briefed, and do not believe that a hearing is necessary. L.R. 105.6. (D. Md. 2018). The Court grants the motion, as set forth more fully herein.

## I. BACKGROUND

On October 28, 2019, Plaintiff filed his Complaint for unpaid overtime and minimum wages. The Complaint, which is seven pages in length, contained two claims, specifically violations of: (1) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* (Count I); and (2) the overtime and minimum wage provisions of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Empl. §§ 3-413(c), 3-415(a) (Count II). According to the Plaintiff, between on or about May 15, 2019 – September 27, 2019, the

1

Defendants did not pay him the minimum wage and overtime wages as required by law. (ECF No. 1). In this action, Plaintiff sought approximately $15,000 damages. (ECF No. 22).

On November 25, 2019, Defendants filed their Answer. (ECF No. 11). On that date, Defendants also made a Fed. R. Civ. P. 68 Offer of Judgment ("Rule 68 Offer"). In it, Defendants offered that judgment could be entered against them in the amount of $10,000 "to resolve all claims by Mr. Molina in this action, with an additional amount for . . . reasonable attorney's fees and costs accrued to the date of service [of the Rule 68 Offer] as determined by this Court." (ECF No. 42-2).[1] On or about December 4, 2019, Plaintiff rejected the Rule 68 Offer. (ECF No. 21).

Despite the Court's order that the parties file an initial joint status report, *see* ECF No. 19, on December 6, 2019, Defendants filed their status report, and on December 11, 2019 Plaintiff filed his. (ECF Nos. 21, 23).[2] On December 18, 2019, the Court conducted a Rule 16 conference, during which it stayed the remaining discovery deadlines until March 31, 2020, i.e., for a sufficient period of time for a mediation to occur. (ECF No. 25). In addition, the Court ordered the parties to exchange discovery limited to the principal issue still in dispute, namely the first date that Plaintiff began working for Defendants and at which locations. (ECF No. 24).

On January 2, 2020, Defendants docketed a notice of intent to file a motion for Rule 11 sanctions, which this Court ordered struck from the record that same day because Defendants failed to comply with this Court's order. (ECF Nos. 29, 30, 31). After a settlement conference was scheduled for April 30, 2020, Plaintiff filed an unopposed motion to stay discovery pending

---

[1] Defendants docketed their Rule 68 Offer in violation of the Federal Rules of Civil Procedure, so it was stricken from the record. (*See* ECF No. 16). *See also* Fed. R. Civ. P. 68(a), which permits docketing of an offer of judgment only after acceptance of the same by the offeree.
[2] The Court notes that the status reports are not significantly different from each other. It is inexplicable why the parties were unable to simply agree that their different positions could be included in a single joint status report.

mediation, which the Court immediately granted. (ECF Nos. 34, 35). Between April 9, 2020 and September 11, 2020, there were no court appearances, nor were any motions filed by either party.

The parties reached a global settlement during the mediation. The terms of that agreement included a $10,000 payment to Plaintiff within 10 days after entry of an order approving a settlement agreement, plus an additional amount for reasonable attorney's fees to be determined by the Court. (ECF No. 39-1).

Thereafter, the Court set deadlines for the parties to submit the joint motion for approval of the settlement agreement and for briefing on the attorney's fees and costs sought by Plaintiff's counsel. (ECF Nos. 37, 38). On October 16, 2020, the parties submitted a joint motion for settlement, which the Court approved. (ECF Nos. 39, 40).

On December 3, 2020, Plaintiff filed his Motion. Defendants responded on December 11, 2020. ("Opposition") (ECF No. 42). On January 14, 2021, Plaintiff's counsel filed "Plaintiff's Reply Memorandum in Support of Petition for Attorneys' Fees and Costs and Request for Supplemental Fees and Costs." ("Reply-Request") (ECF No. 43).

## II. ANALYSIS

As a preliminary matter, a plaintiff who prevails on an FLSA claim is entitled to the payment of attorney's fees and costs. 29 U.S.C. § 216(b).[3] However, the amount awarded for fees and costs is discretionary. *See Randolph v. Powercomm Constr., Inc.*, 715 F. App'x 227, 230 (4th Cir. 2017); *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). In order to recover attorney's fees

---

[3] In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

and costs, a plaintiff must be a "prevailing party." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[4]

Because judgment has been entered in Plaintiff's favor, he is indisputably a "prevailing party" entitled to attorney's fees and costs. *Id.* at 433 (Plaintiff is a prevailing party . . . if successful "on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit"). As set forth *infra,* the amount of attorney's fees and costs awarded to Plaintiff as a prevailing party must be reasonable.

In addition, in our district, Appendix B to the court's Local Rules sets forth the rules and guidelines for attorney's seeking fee awards in cases such as this one. *See* United States District Court for the District of Maryland: Local Rules, Appendix B, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases ("*the Guidelines*" or "Loc. R., App. B."), ¶¶1a-1b, 2-4.

### A. *Impact of Offer of Judgment: Attorney's Fees*

Pursuant to Fed. R. Civ. P. 68(a), at least 14 days in advance of trial, a defendant may serve on a plaintiff "an offer to allow judgment on specified terms, with the costs then accrued." If, within 14 days of being served, the plaintiff accepts the offer in writing, "either party may then file the office and notice of acceptance." *Id.* If, however, a plaintiff rejects an offer and later obtains a judgment that is "not more favorable than the unaccepted offer," then the plaintiff must "pay the **costs** incurred after the offer was made." Fed. R. Civ. P. 68(d) (emphasis supplied).

In opposing the fee petition, Defendants argue that they should not pay for any attorney's fees or costs incurred after the date that they made an offer of judgment to Plaintiff, because the

---

[4] Although *Hensley* explains the standards of "prevailing party" under 42 U.S.C. § 1988, *Hensley* extends the standards to "all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *Hensley*, 461 U.S. at 433 n.7, and its standards are therefore pertinent to an award of fees under the FLSA.

4

recovery ultimately obtained by him is not more favorable. (Opposition, p. 6). In this case, Defendants made an offer of judgment of $10,000 payable to Plaintiff with an additional amount for reasonable attorney's fees and costs "accrued" as of the date of the offer, which was as of November 2019. (ECF No. 42-2). In addition, the Rule 68 offer lacked a date by which that amount would be paid to Plaintiff. (*Id.*). In contrast, the settlement reached in this case provides for an identical amount of $10,000 to be payable to Plaintiff, yet with a date specified for payment and an additional amount for "<u>reasonable</u> attorney's fees and costs incurred in connection with the case." (ECF No. 39-1, ¶¶ 2, 6) (emphasis in original).

Pursuant to both the Rule 68 offer and the settlement agreement the Plaintiff is to receive $10,000. The question, then, is whether this particular FLSA plaintiff who ultimately settled for an amount equivalent to the rejected Rule 68 amount is entitled to attorney's fees incurred after the date he rejected the offer. The Court finds that the answer to that question is "yes."

In *Marek v. Chesny*, a civil rights case involving violations of 42 U.S.C. § 1983, the Supreme Court analyzed whether the term "costs" in Rule 68 included "attorney's fees awardable [under the statute]." 473 U.S. 1, 7 (1985). The Supreme Court opined that the policy objective underpinning Rule 68 is to encourage settlements of all litigation, including civil rights cases. 473 U.S. at 5. The Supreme Court held that because § 1983 defined "costs" to include attorney's fees, then "all costs properly awardable . . . [were to be] considered within the scope of Rule 68 'costs.'" *Id.* at 9. Accordingly, the Supreme Court held that a § 1983 plaintiff who failed to obtain a judgment that was more favorable than an unaccepted Rule 68 offer, was not entitled to any attorney's fees incurred after the date that she rejected the offer. *Id.* at 9.

The FLSA statute, however, has a different fee-shifting provision. Specifically, 29 U.S.C. §216(b) allows for payment of "a reasonable attorney's fee to be paid by the defendant, **and** costs

5

of the action." In other words, "attorney's fees" is defined separately from "costs." Accordingly, I do not find that Rule 68 automatically operates to preclude the award of reasonable attorney's fees to the prevailing party in an FLSA action following rejection of a Rule 68 settlement offer. *See Gurule, et al. v. Land Guardian, Inc., et al.*, 912 F.3d 252, 260 (5th Cir. 2018); *Haworth v. State of Nev.*, 56 F.3d 1048, 1051 (9th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994) *see also Marek*, 473 U.S. at 13, 43-44 (Brennan, J., dissenting) (a Rule 68 offer does not affect a court's award of attorney's fees under 29 U.S.C. § 216(b), i.e., "[s]tatutes that do not refer to attorney's fees as part of the costs")).

In addition, the settlement agreement countenances the possibility of payment for attorney's fees after November 2019, which had to be an amount higher than the attorney's fees accrued as of that time. This is because an FLSA settlement agreement must be approved of by the Court, *see Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *1, 2 (D. Md. June 13, 2013), which requires the filing of a motion to approve the settlement that necessarily involves accrual of attorney time and fees. Thus, the entire settlement reached is for a higher amount, not an equivalent one.[5]

---

[5] While this Court has not found any cases in the Fourth Circuit addressing the equivalent Rule 68 offer - judgment-obtained scenario, the Ninth Circuit addressed the issue in *Lang v. Gates*, 36 F.3d 73 (9th Cir. 1994). In *Lang*, the defendants made an offer of judgment to settle a civil rights case for $600,000, plus reasonable attorney's fees and costs incurred to date. The case involved plaintiffs who alleged that Los Angeles police officers and other government officials violated their civil rights under 42 U.S.C. § 1983. The Rule 68 offer was not accepted by both plaintiffs, so it was deemed rejected. Nine months later, the court approved a settlement agreement in the equivalent amount of $600,000, plus attorney's fees "to be determined a later date." 36 F.3d at 74. The plaintiff's attorney filed a motion for approximately $1.2 million in attorney's fees, which the district court reduced to $247,368. The district court relied upon Rule 68's "not-more-favorable" language and rejected the amount of attorney's fees incurred after the offer of judgment, because plaintiffs recovered $600,000, the identical amount offered nine months earlier. *Id.* at 75-76. On appeal, the Ninth Circuit affirmed the lower court's ruling applying Rule 68 to § 1983 cases resolved by settlement. As is pertinent here, the appellate court, relying on *Marek*, opined that:

> "implicit in [Rule 68's purpose of encouraging settlements] **is the desire to deter a plaintiff's attorney from rejecting reasonable settlement offers and instead pursuing extended negotiations and litigation, in the hope of accumulating fees**. . . . The application of Rule 68 to cases resolved by subsequent settlement fulfills these ends by encouraging plaintiffs, defendants, and their attorneys to settle. From a plaintiff's perspective, such application of Rule 68 means that

However, as set forth more fully below, the Court does find that the rejected offer in this FLSA case "should nonetheless be considered in assessing the reasonableness of any attorney's fee award." *Gurule,* 912 F.3d at 260; *see also Haworth,* 56 F.3d at 1052; *Sheppard v. Riverview Nursing Ctr., Inc.,* 88 F.3d 1332, 1337 (4th Cir. 1996) (in a Title VII case, a court can consider plaintiff's "rejection of a settlement offer as one factor affecting its decision whether to award fees or in what amount").

### B. FLSA Claim: Reasonable Attorney's Fees

To calculate the amount to be awarded in attorney's fees, a court must determine what is reasonable. *Hensley*, 461 U.S. at 433. To do so, courts engage in a three-step process. First, a court must calculate the lodestar, "the number of reasonable hours expended times a reasonable rate." *Randolph*, 715 F. App'x at 230 (citing *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). To determine reasonable hours and rates, the Fourth Circuit has held that a court's discretion should be guided by the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the *Johnson* factors), which was initially adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). Later the Fourth Circuit further tweaked the *Johnson* factors in *McAfee v. Boczar*. The *Johnson* factors are:

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

---

plaintiffs who fail to accept an initial reasonable offer will not recoup attorney's fees if the case is settled by a later offer of **lesser** or **equivalent** value. This result "will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile. . . ." In contrast, the narrow reading that [the Langs' attorney] proposes would frustrate the objectives of Rule 68. A plaintiff who is free to accept successive settlement offers has little incentive to consider carefully an initial offer, despite that offer's reasonableness."

36 F.3d at 76 (emphasis supplied). Thus, Defendants' argument would persuade this Court, were this not an FLSA case.

7

(3) the skill required to perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation (whether the fee is fixed or contingent);

(7) the time limitations imposed by the client or the circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation, and ability of the attorney(s);

(10) the "undesirability" of the case within the legal community in which the suit arises;

(11) the nature and length of the professional relationship between the attorney and the client; and

(12) attorneys' fees awards in similar cases.

738 F.3d at 88 n.5; *see also Thompson v. HUD*, Civ. No. MJG 95-309, 2002 WL 31777631, at *6 n.19 (D. Md. Nov. 21, 2002).

Per *Randolph*, the second step requires a court to subtract fees for hours spent on unsuccessful claims unrelated to successful ones. 715 F. App'x at 230.

As a third and final step, a court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Randolph*, 715 F. App'x at 230 (citing to *McAfee*, 738 F.3d at 88).

1. <u>Attorneys' Fees Sought</u>

Initially, Plaintiff sought $24,587.50 in attorney's fees comprised of 102.6 hours of services performed by eight people: four attorneys (Mrs. Melehy and Messrs. Melehy, Balashov,

and Mansmann); three people classified as paralegals (Mr. Blackmore, Mr. Grau, and Ms. Aguilar, who served as an interpreter); and one law clerk (Ms. Harris). (Motion, p. 24; ECF No. 41-2). Next, Plaintiff's Reply-Request seeks an additional $1,800,00 in attorney's fees for 6.80 hours purportedly expended in responding to the Opposition, and 1.20 hours spent communicating with Plaintiff about "matters related to settlement after December 4, 2021(sic)." One attorney and two people classified as paralegals (Balashov, Grau and Aguilar) performed these services. (ECF Nos. 43, 43-1). In sum, then, Plaintiff seeks $26,387.50 in fees, and costs in the amount of $1,527.49. Plaintiff's counsel argues that all *Johnson* factors support the amount of fees sought, as they are reasonable. (Motion, pp. 6-19; Reply-Request, pp. 9-10).

In opposing the fee petition, Defendants advance the following additional arguments. First, that the attorney's fees sought are unreasonable because the number of hours claimed are excessive. This argument directly and indirectly implicates *Johnson* factors 1, 2, 3, and 9. Second, the hourly rate of reimbursement sought for the interpreter, two paralegals, and law clerk is excessive. This implicates *Johnson* factors 5 and 9. Third, that the attorney's fees awarded should be proportional to the amount recovered by Plaintiff, and consideration should be given to awards in other cases. This implicates *Johnson* factors 8 and 12. (Opposition, pp. 6, 9-12).

As a preliminary matter, I do not find that any step-two *Randolph* deduction (successful v. unsuccessful claims) applies to this case. Following the *Johnson* framework, the Court addresses the lodestar amount immediately below, and later analyzes the degree of success. *Randolph*, 715 F. App'x at 230.

2. Lodestar Analysis: Hours and Rates

The first factor involves the time and labor expended. To determine reasonableness, the Court also analyzes these other *Johnson* factors: the novelty and difficulty of the questions

9

presented, the skill required to perform the legal service, and the experience, reputation, and ability of the attorneys. *See Thompson*, 2002 WL 31777631, at *6-7 (analysis of *Johnson* factors 1-3 together). Plaintiff bears the burden of establishing the reasonableness of the hours for which reimbursement is sought. *Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.*, Civ. No. DKC-06-3177, 2012 WL 4324881, at *6 (D. Md. Sept. 18, 2012). In addition, the party seeking fees must "show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, Civ. No. 07-cv-065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008). Moreover, when faced with an "overstaffed" case, a court can exercise its discretion and exclude hours billed. *See Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir. 1995) ("[p]roperly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion"); *see also Schlacher v. Law Offices of Phillip J. Roche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) ("overstaffing cases is inefficiently common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees").

To aid a court in determining the reasonableness of the hours billed, the Guidelines require the Plaintiff to submit itemized time records broken down by attorney or other timekeeper, and by litigation phases. *See* Loc. R., App. B. ¶¶ 1a-1b. Here, Plaintiff largely complied with the Guidelines, providing: a summary spreadsheet of hours and categories of work performed by attorney or professional, with hourly rates; the retainer agreement; and declarations and an affidavit of counsel. Of note, however, is the fact that there is no information provided about Christopher Grau, who is billed as a paralegal. *See* Motion; ECF Nos. 41-3 through 41-6. For the most part, then, Plaintiff has met his initial burden of demonstrating that he can seek attorney's

fees for hours expended. *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97-98 (4th Cir. 1993).[6]

A review of Plaintiff's billing records reflects that this case was active for about one year, the most significant events are: investigation and drafting of the Complaint; the parties exchanged some limited discovery; counsel communicated about the dispute regarding Plaintiff's start date and location workstation; preparation for and attendance at a successful mediation; attorney-client communications; the motion to approved settlement was authored; and the motion for attorney's fees and costs was prepared. (ECF No. 41-2, pp. 1-15). Analyzing *Johnson* factors 4, 6, 7, 10, and 11, counsel represented Plaintiff on a contingency basis, (ECF No. 41-3), and "cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action." *Matias Guerra v. Teixera*, Civ. No. TDC 16-618, 2019 WL 3927323, at *7 (D. Md. Aug. 20, 2019). In addition, while FLSA cases have a fee-shifting statute, counsel is still required to bear all litigation costs and can seek recovery only if their client prevails. *Id.* Moreover, the amount of time spent drafting the initial Motion and Reply-Request are reasonable. The pleadings were supported with affidavits, declarations, and billing information. Thus far, Plaintiff has met his burden as to reasonable hours. However, analyzing the caselaw and carefully scrutinizing the billing records and the docket sheets in this case, must result in some reductions.

First, in violation of the Court's order, on January 2, 2020, Defendants filed a "Notice of Intent to file for Rule 11 Sanctions." (ECF No. 29). Court records reflect that within a short time (less than 2 hours) after that notice was filed, the Court's staff struck the pleading. (ECF No. 31). Despite this, Plaintiff's counsel seek reimbursement for work performed associated with this

---

[6] Contrary to Defendants' argument, *see* Opposition at 9, there is no requirement that the materials submitted "separately state the hours worked [by each timekeeper]."

pleading on January 2, 2020 and January 6, 2020. (ECF No. 41-2 pp. 5, 8). There was no live issue that the Court ordered briefed. Plaintiff is not entitled to recover fees for time spent associated with a pleading that has been struck, as it has no bearing on the ultimate results obtained. *See, e.g., Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d. 825, 839 (D. Md. 2005) (work that was not part of "a necessary step to ultimate victory" is not chargeable in a fee petition) (quoting *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991)).

Second, Plaintiff never provided information related to Christopher Grau's qualifications or experience. Because the Court lacks this information, it is unable to determine the reasonableness of his hours or his hourly rate—does he have the requisite experience? *See Gonzales v. Caron*, Civ. No. CBD 10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). Thus, hours associated with Mr. Grau will be struck.

Third, the Court observes a few entries for "preparing the complaint package," and "calendaring deadlines," and "preparing documents for mediation." (ECF No. 41-2, pp. 3, 4, 13). These are non-compensable forms of clerical work that have been stricken. *Two Men & A Truck/Int'l, Inc. v. A. Mover, Inc.*, 128 F. Supp. 3d 919, 929-30 (E.D. Va. 2015) (forms of non-compensable clerical tasks include "collating and filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings and preparing sets of orders, document organization, creating notebooks or files, updating attorneys' calendars, assembling binders, emailing documents or logistical calls with the clerk's office") (citations omitted); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 278 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them").

Fourth, this matter was staffed with four attorneys, two of whom are very accomplished and have extensive experience in employment law. It was also staffed with two junior attorneys, a law clerk, two paralegals, and a receptionist who acted as an interpreter. The Court finds that this case was short-lived and not particularly complex. The well-pled Complaint relates only to one plaintiff. The allegations are relatively straight-forward, namely that the Plaintiff worked at two locations owned by Defendants, yet they failed to pay him the minimum wage or overtime wage amounts due, based on the hours that he worked. (*See* Complaint ¶¶ 9-14,16, 22-24). In addition, the Complaint was filed on October 28, 2019, roughly one month after the alleged end date of the misconduct. Roughly thirty days later, Defendants made an offer of judgment, which was rejected by Plaintiff. (ECF No. 42-2). No in-court proceedings occurred; no substantive motions were filed, other than the motion to approve of the settlement agreement and the motion related to attorney's fees. The Court stayed full discovery to allow for mediation, as a way of honoring the parties' interests in keeping litigation costs low. (ECF Nos. 24, 25). There were virtually the same number of timekeepers before the Rule 68 offer as afterwards. In sum, given the landscape in this case, there was no need for so many timekeepers to have played a role. The Court finds that the case was overstaffed, and an unreasonable number of hours have been claimed by Plaintiff. Because this case was overstaffed, the Court will exclude some of the hours billed. *See Trimper v. City of Norfolk*, *supra*, at 76-77.

In sum, upon analyzing the facts and *Johnson* factors 1, 2, 3, and 9, the hours claimed were excessive. Where precision is not possible, an overall reduction of approximately **$5,450** will achieve "rough justice" by way of reasonably estimating the fees associated with the unreasonable hours. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (It is the duty of a court to accomplish "rough

justice, not [] auditing perfection" when determining what attorney's fees to award under the circumstances).

Defendants second argument is that the $150/hour rate sought for the interpreter (Ms. Aguilar), two paralegals (Messrs. Blackmore and Grau), and the law clerk (Ms. Harris) is excessive. Defendants do not object to any other hourly rates. (Opposition, p. 10).

Continuing the lodestar analysis, this Court must determine the reasonable hourly rate for these professionals by examining the prevailing market rate. To do so, the Court analyzes *Johnson* factors 5 and 9. In this District, the Guidelines, although not binding, presumptively set forth ranges of reasonable hourly rates for the market, based on, e.g., years of experience. *See Gonzales*, 2011 WL 3886979, at *2. Fees are recoverable for support staff as long as they do not perform "purely clerical" work. *Jenkins*, 491 U.S. at 288 n. 10 (billing for paralegals appropriate as a lower cost alternative to attorneys to "encourage cost-effective delivery of legal services") (quoting *Cameo v. Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 846 (7th Cir. 1984)). The Guidelines set forth hourly rates only for "paralegals and law clerks" as ranging from $95.00 to $150.00. *See* Loc. R., App. B. ¶ 3f. However, other courts in this District have awarded fees for non-attorney support staff who perform functions similar to those performed by paralegals. *See, e.g.*, *Martinez Perez v. Cheng*, Civ. No. GJH 18-3348, 2019 WL 7049688, at *6 (D. Md. Dec. 23, 2019) (support staff's work compensable); *Osorio de Zavala v. Tortilleria El Volcan, LLC*, Civ. No. TDC 17-3903, 2019 WL 2366363, at *10-11 (D. Md. June 4, 2019) (fees awarded for work performed by support staff).

As stated previously, this Court struck entries associated with paralegal Christopher Grau. Next, regarding paralegal Nicholas Blackmore, the Court has already struck entries related to his work on non-compensable clerical work. (ECF No. 41-2, pp. 3, 4, 13). The other types of work

he performed are activities that traditionally support litigation and will be allowed at the rate sought. Regarding the law clerk De-Yan Harris, at the time that she performed the work in 2019 she was a recent law school graduate. (ECF 41-3, p. 5). The tasks that she performed were of the type typically performed by paralegals, and is thus compensable at the rate sought, as she had more education. Finally, regarding Ms. Aguilar, she began as a receptionist and then became a paralegal. Entries related to her reflect that she performed strictly Spanish interpreter services, but did so to aid the attorneys in communicating with the client about a myriad of matters, e.g., discovery. (ECF No. 41-2, pp. 2, 3, 7-9, 11). In other words, for a given activity, Ms. Aguilar was present and an attorney or law clerk was also present, and there are two entries that correspond to those two timekeepers. The Court notes that the Guidelines Loc. R., App. B. ¶2d. provides that only one lawyer is to be compensated for intra-office conferences, and the time compensable may be charged "at the rate of the more senior lawyer." But that assumes that both participants are exercising the same type of skill. Here, Mr. Melehy sets forth how indispensable Ms. Aguilar's services are, as she enabled the attorneys to communicate with their client. (ECF NO. 41-3, p. 5). Her skills and qualifications are essential, but not to be compensated at the same rate as a paralegal with legal training and experience, and not when she performed her work in tandem with another professional for whom reimbursement has been sought. Accordingly, the Court finds that a reasonable hourly rate for Ms. Aguilar is $95.00. Applying "rough justice," *Fox*, 563 U.S. at 838, her entries amount to about $1,600.00. The Court will deduct **$550.00.**

        3. <u>Consideration of Rejection of a Settlement Offer</u>

Defendants argue for some "proportionality" between the fees sought, and the amount recovered by Plaintiff. Defendants also cite to attorney's fees awards in similar cases. (Opposition, pp. 7, 12). The Court analyzes *Johnson* factors 8 and 12. In his Complaint, Plaintiff

sought $4,864.66 in unpaid overtime wages as well as "an equivalent amount as liquidated damages [in the amount of $10,360.58(sic)]." (Complaint, p. 7). At settlement Plaintiff sought and recovered $10,000, or more than twice the amount of unpaid wages. (ECF No. 39-1). After evaluating FLSA verdicts in this district and considering Defendants' argument, the Court finds that its reduced lodestar amount of $20,387.50 is reasonable. *See, e.g., Chaten v. Marketsmart, LLC, et al.*, Civ No. PX 19-1165, 2020 WL 4726631, at *9 (D. Md. Aug. 14, 2020) (plaintiff's damages were close to the amount of attorney's fees awarded); *Nelson v. A&H Motors, Inc.*, Civ. No. JKS 12-2288, 2013 WL 388991, at *3 (D. Md. Jan. 30, 2013) (Plaintiff's damages were $4,300 and attorney's fees and costs were $8,551.90).

   4. Degree of Success

As a third and final step, a court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Randolph*, 715 F. App'x at 230. Here, Plaintiff recovered $10,000, more than the double the wages sought for the FLSA count, and almost all of the $10,360.58 sought in Count II of the Complaint for the MWHL violation. Based on these facts, no further reduction is warranted.

However, as set forth below, the Court will consider the rejected offer in this FLSA case when assessing the reasonableness of costs sought. *Compare Gurule,* 912 F.3d at 260; *see also Haworth,* 56 F.3d at 1052; *Sheppard v. Riverview Nursing Ctr., Inc.,* 88 F.3d 1332, 1337 (4th Cir. 1996) (in a Title VII case, a court can consider plaintiff's "rejection of settlement offer as one factor affecting its decision whether to award fees or in what amount").

**C. Costs**

Plaintiff initially requested $1,228.33 in costs associated with legal research, photocopies, postage, PACER fees, and the filing fee for the Complaint. (Motion, p. 22; ECF No. 41-7).

16

Defendants oppose that amount on two grounds. First, Defendants object to the payment of any costs after November 25, 2019, i.e., after the date they made a Rule 68 Offer, asserting that these expenses have been "incurred needlessly." Defendants assert that this amount equals $613.78. (Opposition, p. 13). Second, Defendants aver that a $166.65 cost associated with Westlaw research should be denied because the description of the same is too vague. According to Defendants, the total amount allowed for costs should be $447.90. (*Id.*).[7]

In his Reply-Request, Plaintiff counters that the $1,228.33 amount is recoverable, as Plaintiff obtained a more favorable settlement than the Rule 68 Offer, and that the Westlaw research cost is adequately described. (Reply-Request, p. 9; ECF No. 41-2, p.1; ECF No. 41-7). Plaintiff also seeks an additional $299.16 in costs associated with conducting legal research to aid his counsel in drafting the Reply, particularly as related to the Rule 68 issue. (Reply Request, p. 10; ECF No. 43-2). Thus, the total reimbursement amount sought is $1,527.49. Plaintiff substantiates these amounts in the attachments to the fee petition and the Reply-Request. (ECF No. 41-2, 41-7.; 43-3).

In an FLSA case, a court has discretion to determine the costs that can be imposed against the losing party. *Roy v. Cnty. of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998). Costs that may be taxed against a losing defendant include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988) (citing *Northcross v. Bd. of Educ. of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979)). The following are examples of the categories of costs that have been charged to losing defendants: "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Almendarez v. J.T.T.*

---

[7] The Defendants' do not clearly articulate how they arrived at their figures, and when the Court "does the math," it does get a total that matches the amounts that Defendants seek in reductions. (ECF No. 41-7).

17

*Enters. Corp.,* Civ. No. JKS 06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (citing *Vaughns v. Bd. of Educ. of Prince George's County,* 598 F. Supp. 1262, 1289–90 (D. Md. 1984)).

As stated *supra*, pursuant to Fed. R. Civ. P. 68(d), if a plaintiff rejects an offer and later obtains a judgment that is "not more favorable than the unaccepted offer," then the plaintiff must "pay the **costs** incurred after the offer was made." Fed. R. Civ. P. 68(d) (emphasis supplied).

Here, pursuant to both the Rule 68 offer and the settlement agreement, the Plaintiff received $10,000. The question, then, is whether this particular FLSA plaintiff who ultimately settled for an amount equivalent to the rejected Rule 68 amount is entitled to all costs incurred after the date he rejected the offer. The Court finds that the answer to that question is "no." The plain language of Fed. R. Civ. P. 68(d) warns plaintiffs that a judgment that is "not more favorable than the unaccepted offer," could result in a **plaintiff** "pay[ing] the **costs** incurred after the offer was made." (emphasis supplied). Here, the amount that Plaintiff was offered and the amount he received are equivalent; the latter is not "more favorable." While the Court could require Plaintiff to pay Defendant's costs incurred after rejecting the Rule 68 offer, it will not do so. The Court will allow the expenses before December 2019 and the Westlaw amounts after the Offer of Judgment was made (i.e., December 2019 and later), as those charges were reasonable and necessary to research the Rule 68 issue and find caselaw to rebut arguments made in the Opposition. (ECF No. 41-7). Otherwise, the Court will reduce the costs by **$500.00** as a way to incentive future plaintiffs who reject Rule 68 offers to "think very hard about whether continued litigation is worthwhile," *Marek*, 473 U.S. at 11.

### III. CONCLUSION

In sum, Plaintiff's Motion, ECF No. 41, is **GRANTED**, as set forth herein. The Court has made the adjustments set forth above. After that, the Court multiplied the number of reasonable

hours expended by the reasonable rates for the attorneys and professionals as instructed by *Randolph,* and followed the other *Randolph* requirements. Plaintiff will be awarded $**20,837.50** in attorneys' fees, and $**1,027.49** in costs. A separate Order follows.

Dated: July 6, 2021  /s/
The Honorable Gina L. Simms
United States Magistrate Judge